IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICK VALES, et al.,      )    Civil No. 06-1038-PA
                        )
        Plaintiffs,    )    **OPINION AND ORDER**
                        )
        v.            )
                        )
JOSEPHINE COUNTY, et al.,  )
                        )
        Defendants.    )
----------------------------)

**PANNER, Judge.**

Seven motions are pending.

**A.**    **Plaintiffs' Motion (# 242) to Extend Deadline for Service**

    **1.**    **Procedural History**

This civil rights action was filed on July 20, 2006. Various Answers were filed.  On September 21, 2006, Magistrate Judge Cooney directed that any additional claims or parties be added by April 20, 2007.  On April 19, Judge Cooney extended the deadline for filing an Amended Complaint to June 3, 2007.

On June 1, 2007, Plaintiffs filed a First Amended Complaint. Magistrate Judge Clarke struck that document because it was filed without leave of court, but then granted leave nunc pro tunc.  On August 1, 2007, Plaintiffs filed a Second Amended

/ / / /

Complaint.  In short order, Answers were filed.  On August 24, 2007, Plaintiffs sought leave to file a Third Amended Complaint.

On September 21, 2007, Plaintiffs moved to extend the deadline for serving summons and Complaint upon the defendants newly named in the First Amended Complaint.  The motion stated that the 120-day deadline would expire on September 28, and sought an extension until November 27, 2007.

A hearing on the motion was set for October 2, but Judge Clarke then advised the parties of a possible conflict.  The case eventually was reassigned to me.

On December 18, 2007, I granted Plaintiffs leave to file the Third Amended Complaint.  I denied Plaintiffs' pending motion to extend the deadline for service of the summons and First Amended Complaint, but gave Plaintiffs leave to move for reconsideration, "accompanied by a legal memorandum and an affidavit detailing the efforts Plaintiffs made to accomplish service within the 120 days prescribed by Fed. R. Civ. P. 4(m), and why those efforts were unsuccessful."

On February 15, 2008,  Plaintiffs belatedly sought reconsideration.  Over Defendants' objections, I permitted Plaintiffs to file the motion, but directed Plaintiffs to address several issues in the motion:

> Plaintiffs shall (1) list the specific defendants
> who were not timely served; (2) explain why they
> were not timely served, and state when they will
> be (or were) served; (3) explain why Plaintiffs
> waited two months to seek reconsideration of the
> December 18 ruling; and (4) discuss any unfair
> prejudice to Defendants, and any additional

discovery that would be required, if the court
allows the requested extension.

In the motion for reconsideration, Plaintiffs seek (1)
additional time to complete service on 49 defendants, (2) costs
of service because those defendants refused to waive service, or
(3) in the alternative, to deem the 49 defendants served.

Briefs in opposition have been filed by the City of Grants
Pass, Josephine County, and the Oregon State Police.

Trial is set for June 12, with a pretrial conference on
May 5.  Initial trial documents are due April 16.

   2.   **Merits of the Motion**

Fed. R. Civ. P. 4(m) provides, in relevant part:

> If a defendant is not served within 120 days after
> the complaint is filed, the court--on motion or on
> its own after notice to the plaintiff--must
> dismiss the action without prejudice against that
> defendant or order that service be made within a
> specified time. But if the plaintiff shows good
> cause for the failure, the court must extend the
> time for service for an appropriate period.

In recent years, Rule 4(m) has been liberally construed.  An
extension of time may be granted even though the request was not
made until after the 120 day period had expired.  Mann v.
American Airlines, 324 F.3d 1088, 1090 (9th Cir. 2003).  The
court also has discretion to grant an extension even if good
cause for the failure to serve is not shown.  In re Sheehan, 253
F.3d 507, 512 (9th Cir.2001).  A showing of good cause merely
makes the extension mandatory instead of discretionary.  Id.
/ / / /

The present case falls within the court's discretion, either to allow or to deny the extension.  Plaintiffs have not shown sufficient cause to make the extension mandatory.  Nor are the facts so egregious that granting the extension would be an abuse of discretion.  Cf. Efaw v. Williams, 473 F.3d 1078 (9th Cir. 2007) (a rare case in which the Ninth Circuit decided it was an abuse of discretion to allow the extension).

This court therefore considers factors such as the length of the delay, the reasons for the delay, and any unfair prejudice to defendants if the motion is granted or to Plaintiffs if the motion is denied.

Plaintiffs were not diligent in attempting service. Plaintiffs made some informal overtures, apparently expecting defense counsel to simply agree to waive service.  Defense counsel did not.  Plaintiffs seem not to have anticipated that possibility.  They did not even obtain summons from the Clerk until the 120 days had nearly expired.

 Plaintiffs did not mail copies of the summons and Amended Complaint,[1] and a request to waive service, until September 7 (to 47 defendants) and September 20 (to 18 others) and September 24 (to several other defendants).  On September 24, Plaintiffs also mailed the individual defendants the waiver form the defendants were being asked to sign, which Plaintiffs' counsel had failed to include in the earlier mailings.

---

 [1] The cover letters submitted by Plaintiffs' counsel suggest it was actually the Second Amended Complaint, not the First, that counsel enclosed with the request to waive service.

As Plaintiffs have noted, service was supposed to be completed by September 28.  Given the late mailings, that deadline obviously would expire long before the deadline for defendants to response to the request to waive service, let alone the time required to effect service the old-fashioned way if defendants did not waive service.

As a result, Plaintiffs were obliged to seek additional time.  In requesting the additional time, Plaintiffs stated they would need until November 27 to complete service.  That date came and went.  Almost three months elapsed, while the motion to extend time was pending, yet Plaintiffs made no apparent effort to perfect service.  Nothing in the text of Rule 4(m) requires a plaintiff to wait to perfect service until after the court has ruled on a motion to extend time.  Plaintiffs could have perfected service while that motion was pending.  Promptly completing service would have helped to minimize any prejudice to defendants,  while demonstrating that Plaintiffs were serious about proceeding with the case in a timely manner, if given another chance.

The documents submitted with Plaintiffs' motion to extend time were perfunctory, as with nearly all Plaintiffs' submissions in this action.  I denied the motion, but invited Plaintiffs to file a properly supported motion seeking reconsideration.

Plaintiffs inexplicably waited two months to seek reconsideration.  That counsel was busy with discovery is not a satisfactory answer.  Few matters are more important for a plaintiffs' counsel than ensuring the defendants have been duly

served or have waived service.  Without this small but vital step, other aspects of the case are of little consequence.  In a document submitted in connection with a different motion, Plaintiffs' counsel states he was "beset by illness" but offers no further explanation, nor does he explain why that prevented him from filing the reconsideration motion for two months.

During the two month interval prior to filing the motion for reconsideration, Plaintiffs again failed to perfect service. There is no obvious reason why Plaintiffs could not have completed service during that time period.

The materials submitted with Plaintiffs' motion for reconsideration show little improvement over the perfunctory materials submitted with the original motion.  Counsel did at least identify the 49 defendants remaining to be served. However, the submissions ignore elementary principles of motion practice.  For example, counsel failed to affix an exhibit sticker to (or otherwise label) the exhibits to his Declaration, so the court can tell what pages counsel is referring to in his declaration.  The court was presented with a jumble of paper, and left to sort it out.[2]  This is not an isolated event.  On other motions in this case--including several dispositive motions-- Plaintiffs counsel has failed to file a meaningful response.

---

[2]    Actually, the court had to print those documents itself, because Plaintiffs neglected to furnish paper copies of the documents they electronically filed.  An electronic filing containing nine sub-parts is a document in excess of five pages, for purposes of Local Rule 100.4(b)(1), even if the nine sub-parts individually contain no more than five pages per sub-part.

The court is left with the distinct impression that counsel seriously underestimated the amount of work required, and the organizational skills needed, to litigate a case of this complexity.  Though there is a common core of facts, the case also involves numerous separate incidents involving more than one hundred named plaintiffs and scores of law enforcement officers. The court has little confidence that, if granted an extension, Plaintiffs' counsel could effectively make use of the limited time remaining before trial, let alone try to a jury a case of this complexity.

If the motion to extend time is denied, the prejudice to Plaintiffs is severe.  The statute of limitations has likely run on their claims.  Dismissal "without prejudice" will effectively mean dismissal with prejudice.

Any unfair prejudice to Defendants, if the motion is granted, is less severe.  The identity of the 49 unserved defendants has been known since the First Amended Complaint was filed on June 1, 2007.  The events are essentially the same as were mentioned in the original action commenced in July 2006, which were also the subject of previous tort claim notices.  Most of the individual defendants are employed by several relatively small police departments.  It is highly probable that those individuals received actual notice of this action long ago. Defense counsel has been investigating and conducting discovery on largely the same issues, to defend the claims against the defendants who were already served.

/ / / /

On the other hand, with trial fast approaching, at some point it becomes necessary to decide who is in the case, and who is out.  There are equities favoring each side.  Ultimately, the court must make a decision.

Plaintiffs' counsel failed to perfect service with diligence.  Plaintiffs compounded that error by not acting promptly to complete service during the three months after filing the motion to extend time.  Plaintiffs then waited an additional two months before moving for reconsideration, despite having been invited to file such a motion, and failed to serve defendants during that further time period.  This is not a case of one omission, after which a chastened counsel immediately sought to rectify his error.  It is a series of omissions, with little evidence counsel has changed his ways.

Under the circumstances, the court adheres to its decision denying the motion to extend the time for completing service.[3]

## B.   <u>Plaintiffs' Motion (# 262) to Voluntarily Dismiss three Plaintiffs</u>

The motion is granted.  The dismissals are with prejudice.

/ / / /

/ / / /

---

[3]  Two other arguments merit brief attention.  The City of Grants Pass complains that Plaintiffs' counsel mailed waiver requests to the police officers at their place of work.  That was permissible.  Grants Pass would be far more irate if counsel had sought the officers' home addresses so he could serve them.

The Oregon State Police claims their officers were not named, individually, until the Second Amended Complaint.  That is incorrect.  They were named in the First Amended Complaint as well, albeit incorrectly described as federal officers.

C.    **Plaintiff's Motion to Compel (# 245)**

To the extent the discovery requests were directed to individual defendants who have not been served, they are now moot.  A subpoena or deposition generally is required to obtain discovery from a non-party.

To the extent the discovery requests are directed to a party that has been served, the motion to compel is granted.  Defense counsel's office received the discovery requests, whether on the day Plaintiffs say they sent the request, or on a later date when a copy was "gratuitously emailed" after defense counsel denied receiving the first set.[4]

D.    **Motion for Summary Judgment (# 221) by Klamath Falls Defendants**

The City of Klamath Falls moves for summary judgment on several grounds.  Plaintiffs did not file a response.

1.    **Legal Standards**

Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A material fact is one that may affect the outcome.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment may be granted, despite the presence of factual disputes between the parties, if the resolution of those disputes could not change the

---

[4]    By January 26, 2008, Plaintiffs' counsel knew the attorneys for the Josephine County defendants were refusing to comply with his discovery requests.  The deadline also had passed for the Grants Pass defendants to respond.  Plaintiffs should not have waited until March 9 to file a motion to compel.

final result.  Id.  See also Brunet, Redish, & Reiter, SUMMARY
JUDGMENT: FEDERAL LAW AND PRACTICE § 6.04 (2d ed. 2000).

When a defendant moves for summary judgment, the plaintiff
may not simply rest on his pleadings, but must produce evidence
sufficient to permit a jury to return a verdict in his favor.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The
evidence, and reasonable inferences that may be drawn from it,
must be viewed in the light most favorable to the non-moving
party.  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d
1252, 1257 (9th Cir. 2001).

   2.  **Analysis**

Plaintiffs do not contend, nor have they proffered any
evidence, that a tort claim notice was timely sent to the City.
Summary judgment is granted on the state law claims against the
City of Klamath Falls.

Regarding the federal claims, Plaintiffs offer no evidence
in opposition to the motion, nor have Plaintiffs pointed to any
evidence in the record.  Plaintiffs have not made a sufficient
showing to create a factual dispute for the jury on their claims
against this defendant. Summary Judgment is granted for the City.

**E.   Motion for Summary Judgment (# 205) by Klamath County**
**Defendants**

Klamath County, and Deputies Ray and Bryant, move for
summary judgment.

On the state law claims, Plaintiffs concede tort claim
notices were not timely filed against these defendants.  The
state law claims against these defendants are dismissed.

On the federal claims, Officer Ray denies physical contact with any plaintiff.  Ray say he issued no citations, and made no arrests.  He participated in one incident involving a member of the Vagos Motorcycle Club, but merely as an observer.  He admits being involved in "numerous . . . stops" involving non-Club members, but insists he was merely a ride-along cover officer. So far as Ray knows, with the exception of the one Vagos member, Ray doesn't believe he had contact with any of the Plaintiffs.

Officer Bryant likewise states he was mostly providing backup for other officers and didn't even know the purpose of the original stops, because he didn't make them.  Bryant admits having contact "as a cover officer" with four Plaintiffs on the weekend in question.  Bryant insists it was a "routine traffic stop" but "no citations were issued to these individuals."  He denies searching these Plaintiffs or their vehicles.

Plaintiffs did not respond to Defendants' concise statement of facts, nor did Plaintiffs submit any evidence.  Rather, Plaintiffs attempt to argue the case in a memorandum, relying on on the factual allegations in their Complaint.  That may be permissible on a motion to dismiss, but this is a motion for summary judgment.  When a defendant moves for summary judgment, the plaintiff may not simply rest on his pleadings, but must produce evidence sufficient to permit a jury to return a verdict in his favor.  Celotex, 477 U.S. at 322-23.

For purposes of this motion, I assume, without deciding, that providing cover for improper stops, in futherance of a plan to wrongly intimidate Plaintiffs, might be unlawful in some

instances.  But Plaintiffs point to no <u>evidence</u> supporting their
claims against these defendants.  Accordingly, summary judgment
is granted for Klamath County and deputies Ray and Bryant.

**F.    Motion for Summary Judgment (# 226) by Federal Defendants**

Plaintiffs concede their state law claims against the
individual federal agents are barred, and that the United States
is the only proper defendant on those claims.

In support of their federal law claims against the
individual federal defendants, Plaintiffs offer a single piece of
evidence, the Affidavit of Victoria Bradley.  Many statements are
conclusory, rather than factual.  It also is difficult to link
the events described with any specific defendant.

The only passage in the Affidavit that could even arguably
pertain to these four defendants is:

> I distinctly remember seeing a rifle with a laser
> dot pointed at my stomach held by a man in an FBI
> jacket with reflective lettering on Saturday night
> June 4, 2005 at Schroeder Park.  When he turned to
> an angle, I could see the FBI logo on the back of
> his jacket.  I was seven-months pregnant at the
> time and I saw a small red laser dot on my
> protruding abdomen.  I also saw a little boy next
> to me who I now believe to be EMJ, Enrique Mejia
> Garay, Jr. with a laser dot on his person as well.

ATF Agents Packard and Woods deny being at Schroeder Park on
the night in question, or possessing a rifle or any device that
generates a laser dot.  The evidence proffered by Plaintiffs is
insufficient for a jury to conclude otherwise.  The affidavit
does not identify the man carrying the rifle, or provide a
sufficient description to link that incident to any particular

defendant.  Moreover, Packard and Woods are not FBI agents, but the Bradley affidavit states the man was wearing "an FBI jacket with reflective lettering . . . ."  In theory, Packard or Woods could have borrowed an FBI vest or jacket, but the same is true of almost any law enforcement officer that weekend.  During an incident, officers primarly are concerned with telling friend from foe.  Whether the vest says "Grants Pass PD" or "FBI" is less important.  Plaintiffs have not offered enough evidence for a jury to conclude that Packard or Woods was the man who Bradley saw point a rifle at her and at EMJ.

FBI Agent Jeff Gray denies being at the Park, saying he remained at the command post.  Gray also denies possessing a rifle or any device that generates a laser dot.  That Gray is an FBI agent is not enough to survive summary judgment, absent any evidence contradicting his sworn statement.

The whereabouts of former FBI agent Michels that weekend are unclear.  Agent Gray states that Michels wasn't at the Park, yet Gray never explains how he knows this, especially since Gray says he never left the command post.  Defendants have not provided an affidavit from Michels, or provided any explanation for that omission.  Still, to survive summary judgment, Plaintiffs must furnish some evidence that would permit a jury to find that Michels was at the Park and pointed a rifle at Bradley and EMJ.[5]

-----

[5] For purposes of this motion, I assume, without deciding, that the conduct described by Bradley, if done with intent to intimidate and without lawful justification, violates a constitutional right.

Plaintiffs have not done so.

The record constains insufficient evidence linking these particular defendants to the incident described by Victoria Bradley.  The federal defendants admittedly were involved in other incidents, such as traffic stops, but Plaintiffs offer no evidence that these particular defendants did anything unlawful in regard to a specific named plaintiff.

Summary judgment is granted for defendants Packard, Gray, Michels, and Woods.

**G.    Motion to Dismiss (# 259) as a Discovery Sanction, by OSP Defendants**

The OSP Defendants are dissatisfied with Plaintiffs' response to their discovery requests.  They ask the court to dismiss the Third Amended Complaint, with prejudice, as a discovery sanction.  That motion is denied.

### Conclusion

Plaintiff's renewed Motion (# 242) to Extend the Deadline for Service of the First Amended Complaint is denied.  The claims against those 49 unserved defendants (listed in the motion) are dismissed "without prejudice."

Plaintiffs' Motion (# 262) to Voluntarily Dismiss the claims by Plaintiffs Kevin Widdison, Jennifer Smith, and Michael Shallop, is granted.  The claims by these three Plaintiffs are dismissed with prejudice.

Plaintiff's Motion to Compel (# 245) is granted as to the individual defendants who were served, and denied as to individual defendants who have not been served.

Summary Judgment is granted in favor of the City of Klamath Falls (# 221), Klamath County (# 205), deputies Ray and Bryant, and federal defendants Packard, Gray, Michels, and Woods (# 226).

The OSP Defendants' Motion to Dismiss (# 259) as a Discovery Sanction is denied.

IT IS SO ORDERED.

DATED this 26th day of March, 2008.


/s/ Owen M. Panner

_____
OWEN M. PANNER
UNITED STATES DISTRICT JUDGE